JUDGE PETERS
delivered the opinion or the court.
Appellee (S. F. Roberts) brought this suit in equity against appellants on the 21st of January, 1869, and alleged in his original petition that he, on the 7th of February, 1868, sold by a written agreement sixty acres of land to appellant, Hiram Petty, at the price of two thousand four hundred dollars — one thousand of which was to have been paid in hand at the date of said contract, and for which said Hiram drew an order on Hayden Petty, who was at the time indebted to him in a larger sum than that. He made said order, the writing evidencing the contract of sale, and a paper which he calls a plat of the survey of the lands, parts of his petition, and alleged that the residue of the price was by the terms of the contract to be paid in installments of five hundred dollars *413 tbe 1st of March, 1869; five hundred dollars the 1st of March, 1870; and four hundred dollars the 1st of March, 1871 — all to bear interest from the date of the sale ; that said Hiram took possession of said land immediately after making the contract, and has continued to occupy it ever since; that when he entered upon it, it was heavily timbered) large quantities of which he had cut, sold, and removed, to the value of at least one thousand dollars; that, for the purpose of discharging in part his indebtedness to him, said Hiram assigned to him, on the 4th of March, 1868, the balance of the amount owing by said Hayden Petty to him as his late guardian, which balance then amounted to four or five hundred dollars after paying the one thousand dollars for which the order aforesaid was drawn; and that he was authorized by said Hiram to settle with said Hayden as his guardian, to receive the amount owing by him, and credit the same on the indebtedness of said Hiram to him for the land; that he presented said order to Hayden Petty, and the assignment for the residue of the debt, but he refused to accept the order, to pay him any money, or make any satisfactory settlement of the business, and consequently no part of the purchase-money for the land had been paid; and that so much of the timber and wood had been cut and removed from the land that its value had been greatly reduced, and unless the indebtedness of Hayden to Hiram could be applied to pay him he would lose his debt, or a part of it.
Finally, he prayed for an enforcement of his lien on the land to pay his debt; that Hiram Petty should be enjoined from cutting and removing any more of the timber and wood therefrom; and that Hayden Petty should be compelled to settle his accounts as guardian, and should be adjudged to pay over to him the amount due to Hiram, which he alleged to be $1,473.98, on the 21st of April, 1868; and that Hayden should be enjoined from paying over to Hiram said sum or any part of it.
*414 The foregoing statement contains the substance of the allegations of the original petition, with the prayer for relief; and although there is a prayer for an injunction against Hayden Petty, none was ever obtained.
On grounds set forth in an affidavit filed by appellee on the 23d of February, 1869, a general attachment was granted, and the order therefor was executed on Hiram Petty on the 2d of March, 1869, and on Hayden Petty on the 9th of the same month.
Hiram Petty on the 10th of March, 1869, filed his answer, and admitted he made the contract for the purchase of the land on the 7th of February, 1868, on the terms stated in the title-bond filed by appellee with his petition; and pleads that at the date of said bond he was under twenty-one years of age, of which fact appellee had been informed by Hayden Petty, his guardian, and being young and inexperienced he was easily deceived and imposed on; and appellee availed himself of this advantage to sell him the land at double its real or reasonable value; that he was informed by his guardian, Hayden Petty, before the bond for the sale of the land was signed, that he (Hiram) was not twenty-one years of age; but he still persisted, and came to him and told him that his mother said he was twenty-one years old, and prevailed on him to enter into the contract.
He admits he took possession of the land very soon after he agreed to purchase it, but avers that he only remained on it about one month, then abandoned it, informed appellee that he did not intend to keep it, and has not had it in his possession since. He denies having cut, destroyed, and removed timber and wood from the land to the value of one thousand dollars, or to an amount over the value of a house he had erected on it, and in his answer distinctly elects to abandon the contract on account of his disability of infancy at its date.
*415 On the 11th of March, 1869, Hayden Petty filed his answer, in which he states that Hiram was under twenty-one years of age at the date of the contract for the sale of the land to him, and that he so informed appellee before he made said contract, and forbade him to make it; that when he presented the order on him for one thousand dollars, he at once and positively refused to pay it, and told him the contract was made against his wishes; that the land was not worth more than fifteen or twenty dollars per acre at the time; and assigns as a reason for setting aside the contract that it was made by a man of great experience and skill in trading with an inexperienced and improvident youth, who was not twenty-one years old until the 20th of January, 1869, nearly one year thereafter. He alleges that he had paid to Hiram Petty the whole of what he owed him before the attachment was served on him, except about fifty-three dollars; and that as soon as he learned that Hiram had gone on the land he ordered him to leave it, which he did.
On the 9th of March, 1869, appellee filed an amended petition, alleging that on the first day of that month the second installment for the land had matured, and it, with the interest thereon, was wholly unpaid; that said Hiram was still striving fraudulently to sell and dispose of his property to evade the payment of his debts, and prayed judgment for the last-named sum also.
On this state of the pleadings the cause was heard, and although the circuit judge expressed in his opinion his conviction, from the evidence, that Hiram Petty was under twenty-one years of age at the time he contracted to purchase the land, declares that slight acts after he attained his majority were sufficient to make the contract obligatory on Petty, and that he could not be allowed to avoid his contract without placing the other party in statu quo, and says that appellant has not only failed to offer to restore the land, but has placed *416 it beyond his power to do so by leasing it for a term of years; that he has permitted the tenant to occupy the land claiming under the lease;. has seen him despoil it of its wood and timber without taking any steps to prevent the injury or to disaffirm or avoid his lease; but on the contrary has by his acts affirmed that contract, which prevents him from restoring the possession, as he is bound to do, upon avoiding his contract of purchase.
It is clearly established by the evidence that the twenty-first anniversary of appellant was the 20th of January, 1869. On that day this suit was brought, and the summons was executed on him the 27th of the same month. On the 10th of March of the same year he filed his answer, pleading his infancy, and repudiating the contract on account of his disability to make it. Nothing that he did by way of ratification of the contract between its date and the day of the institution of the suit could be more binding on him than the contract itself. In six weeks after his arrival at full age, in his answer filed in this suit, he repudiated the contract on account of his disability at its date to make it, and also on the ground that he had been deceived and imposed on by appellee. It is true that the lease made by him has not been set aside, nor does he seem to have made any efforts in that direction, nor to restore the possession of the land to appellee; but he has received no rent since he was twenty-one years of age, and taken no steps to recover any, nor has he derived any benefit or advantage from the lease or from the land. He has done no act since he arrived at full age from which his assent to the confirmation of the contract can be inferred; and if there is to be a confirlnation of it, it can not be for what he has done, but it must be for what he has omitted to dio. In 1 Parsons on Contracts, 270, it is said: “As the liability of an infant is defeated by the law for his protection, therefore when he is of full age he may ratify and confirm a contract entered into by him during *417 infancy, and this by parol; but for this ratification a mere acknowledgment that the debt existed or that the contract was made is not enough. It need not be a precise and formal promise, but it must be a direct and express confirmation, and substantially — though it need not be in form — a promise to pay the debt or fulfill the contract. It must be made with the deliberate purpose of assuming a liability from which he knows he is discharged by law, and under no compulsion, and to the party himself, or his agent.”
The mere fact that an infant does not disaffirm a contract after he is of full age is not, it would seem, of itself a confirmation ; but this fact may be made significant by circumstances if coupled with a continued possession and use of property,, or a refusal to redeliver the same, and an assertion of ownership. It may frequently raise by implication of law such confirmation and a promise to pay for the property, especially if either this intention and a promise to pay must be presumed, or a fraud. Indeed any act of ownership after full age may have this effect, but it must be unequivocal.
We are not aware of any adjudged case to the effect that the mere acquiescence for about six weeks after arriving at age, without any immediate benefit, must be deemed a ratification of a contract made by an infant. A reasonable time is allowed after he becomes of age, locus poenitentice, during which he may disaffirm his contract, and during which a mere acquiescence, without unequivocal acts establishing a clear intention to confirm his contract, will not operate as a confirmation. (Story on Contracts, sec. 72.)
In Phillips and wife v. Green, 5 Mon. 344, so confidently relied on by appellee’s counsel, Mrs. Phillips, in 1792, joined with her first husband in a conveyance to Hugh McDermed of some real estate which had descended to her brothers and sisters and herself from her father. At the time of this conveyance she was feme covert and an infant. In January, *418 1796, when she was discovert and of full age, she made another deed, in which she assented to and affirmed the deed of 1792. Afterward,, in a writ of right brought by Mrs. Phillips and a second husband to recover the land embraced in her deed of 1792, this court then held that she elected by the deed of 1796 to affirm and abide by the deed of 1792; and having thus ratified it, she and her husband could not avoid it.
We can not concur with the learned counsel that the two cases are analogous. In the one case the deed made during infancy and coverture was years afterward, when all disabilities were removed, confirmed, and approved by the most solemn and unequivocal act; in the other, to say the most of it, there was only non-action and mere acquiescence for about six weeks.
It is perhaps stating the principle too broadly to say that in no event will an infant be allowed to avoid his contract without restoring what he may have received by it. That is the universal rule where he has been guilty of deceit or fraud; where he has by fraudulently representing himself of age induced another to deal with him. If he afterward seeks in a court of equity to avoid his contract, he must restore to the vendor whatever he received. But the rule may be different where be has been guilty of no fraud. His vendor being aware of his disability, and especially if he procures the contract to be made, in such case, if the infant had wasted or destroyed the property, he might be allowed to avoid the contract without the restoration of it. (Richardson, &c. v. Linney, &c., 7 Ben Monroe, 571.) But if an infant avoids an executed contract, he must restore the consideration received by him. (2 Kent, 240.)
In this case there is no evidence that appellant made any misrepresentations to appellee as to his age; but the weight of the evidence shows that appellee was informed before he made the trade of the disability of Hiram Petty, and was warned *419 not to trade with him. In the writings which he files as evidence of his contract he recites the fact that Hayden Petty was then the guardian of Hiram, showing conclusively that he knew he was under age. It does appear that after the trade was made the mother of appellant sent appellee word that he was twenty-one years of age. In that, however, she was certainly mistaken. But if a restoration of the property is essential to avoid this executory contract, if appellee had the legal title to it, he still retained it. He has neither tendered a deed nor alleged his ability to make one; so that upon the setting aside of the contract, having the legal title to the land, the lease will present no obstacle to his regaining the possession of it, and for what waste and destruction of timber may have been committed by appellant, over and. above the improvements he may have made, he should be held liable.
But appellee has to encounter another difficulty in enforcing a specific execution of this contract. From a decided preponderance of the evidence, the price contracted to be paid for the land was a very high one — more than a fair value, or than it was reasonably worth at the time. A contract so advantageous appellee was desirous to make, and was enabled to consummate it by means of his shill, and the want of experience and judgment on the part of appellant.
The specific execution of a contract in equity is not a matter of absolute right in a party, but of sound discretion in the court. Hence it requires much less strength of case to resist a bill to perform a contract than it does on the part of the plaintiff to maintain a bill to enforce a specific performance. (2 Story’s Equity, sec. 769.) And courts of equity will not proceed to decree a specific performance where the contract is founded in fraud, imposition, undue advantage, mistake, or gross misapprehension. (Ibid. 750.)
The advantage unduly obtained by appellee in this transaction would be sufficient to authorize the chancellor to *420 withhold a judgment to enforce the contract, and from all the evidence in the case the contract should not be executed.
'Wherefore the judgment as to Hiram Petty is reversed, and the cause remanded with directions to refer the case to the master, to ascertain by evidence and report the amount of injury done to the land by the destruction, sale, and removal of timber and wood from the premises by appellant, and the value of improvements put on it by him, and for a rescission of the contract on equitable principles..