PANHANDLE & S. F. RY. CO. v. FITTS.
(No. 1030.)

(Court of Civil Appeals of Texas. Amarillo.
June 21, 1916. On Motion for Rehearing Oct. 11, 1916.)

1. MASTER AND SERVANT ☞180(1)—FEDERAL
EMPLOYERS' LIABILITY ACT—FELLOW SERVANT.

Under federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, §§ 8657–8665), the rule of fellow servant does not preclude recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359, 368; Dec. Dig. ☞ 180(1).]

2. MASTER AND SERVANT ☞265(2)—FEDERAL
EMPLOYERS' LIABILITY ACT—NEGLIGENCE—PROOF.

Under the federal Employers' Liability Act, negligence on the part of the carrier, its officers or agents, must be shown by the injured employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 878, 895, 896; Dec. Dig. ☞265(2).]

3. MASTER AND SERVANT ☞124(3)—INJURY
TO SERVANT—DUTY OF INSPECTING TOOLS.

A simple tool, like a hammer or nails, does not impose upon the master the duty of inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 235; Dec. Dig. ☞ 124(3).]

4. MASTER AND SERVANT ☞101, 102(8)—INJURIES TO SERVANT—DUTY TO FURNISH SAFE TOOLS.

It is the rule in Texas, and also in the Supreme Court of the United States, that a master must use ordinary care to furnish his servant safe tools and instrumentalities with which to do his work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 139; Dec. Dig. ☞101, 102(8).]

5. MASTER AND SERVANT ☞286(4)—INJURIES
TO SERVANT — NEGLIGENCE — QUESTION OF FACT.

In an action under the federal Employers' Liability Act by a railroad's employé for personal injuries, the question whether there was negligence on the part of the road, its officers or agents, in furnishing the hammer and nails which plaintiff's fellow servant was using, and which caused his injury, was of fact, to be determined from the facts found by the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1011; Dec. Dig. ☞ 286(4).]

6. MASTER AND SERVANT ☞204(1)—FEDERAL
EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

Under the federal Employers' Liability Act, § 4 (U. S. Comp. St. 1913, § 8660), in an action against a railroad by its employé for injuries received in interstate commerce, the doctrine of assumed risk applies, and has the same effect as at common law; i. e., the employé does not assume the negligence of the master unless he knew of it, or must necessarily have known of it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 544; Dec. Dig. ☞204(1).]

7. MASTER AND SERVANT ☞288(4)—INJURIES
TO SERVANT—ASSUMPTION OF RISK.

A locomotive fireman, engaged, under the direction of a foreman, in the temporary work of blocking the wheels of an automobile being put into a box car for shipment, did not, as a mat-

ter of law, assume the risk and danger incident to the employment from a sliver of steel splitting off from a nail which his fellow servant was hammering and entering his eye, since, before an employé will be held to have assumed the risk arising out of the negligent conduct of his fellow servant, it must be shown that such conduct was known to the employé, or so customary that he should be charged therewith, and that he appreciated, or was bound to appreciate, the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1072, 1078; Dec. Dig. ☞288(4).]

8. TRIAL ☞260(1) — INSTRUCTION — REPETITION.

The refusal of a requested charge, where the charge of the court substantially covered the issue sought to be presented, was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ☞260(1).]

9. COMPROMISE AND SETTLEMENT ☞20(1) —
EXECUTION.

Where an injured railroad employé signed an agreement releasing the company from all liabilities in consideration of $1 and its engaging to employ him for one day, and the company's agreement to furnish one day's work rested at the employé's option, he, by doing the work furnished him, accepted the proposition and rendered the contract of release executed.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 83–87; Dec. Dig. ☞20(1).]

10. RELEASE ☞20 — FEDERAL EMPLOYERS'
LIABILITY ACT—RELEASE OF LIABILITY.

Federal Employers' Liability Act, § 5 (U. S. Comp. St. 1913, § 8661), rendering any contract void the purpose or intent of which is to exempt the carrier from liability created by the act, has no application to the case of a release of liability, given a railroad by its injured employé after the accident in consideration of being furnished further employment for one day.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 34–36; Dec. Dig. ☞20.]

11. RELEASE ☞13(5)—MISTAKE OR FRAUD —
EFFECT.

Where a railroad's injured employé signed a contract, releasing the road from liability in consideration of its furnishing him one day's employment, such employé not being induced thereto by mistake or fraud, he was bound by such release.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 26; Dec. Dig. ☞13(5).]

On Motion for Rehearing.

12. CONTRACTS ☞88 — CONSIDERATION —
PRESUMPTION.

By direct provision of Rev. St. art. 7093, a written contract imports consideration in the same manner and as fully as sealed instruments.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 403–405, 407; Dec. Dig. ☞88.]

13. CONTRACTS ☞88 — WRITTEN CONTRACT —
CONSIDERATION—PRESUMPTION.

Where a written contract does not show upon its face a want of consideration, it is admissible in evidence without proof aliunde of a consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 403–405, 407; Dec. Dig. ☞88.]

14. RELEASE ☞55—WANT OF CONSIDERATION
—BURDEN OF PROOF.

In an action for personal injuries against a railroad by its employé, the burden was on plaintiff, who asserted that his written release of

liability, in consideration of further employment, was without consideration, to prove the fact.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 94–100; Dec. Dig. ☞55.]

**15. RELEASE ☞58(2) — LACK OF CONSIDERATION—QUESTION FOR JURY.**

In an action for injuries by a railroad's employé, whether plaintiff's written release of liability, executed in consideration of further employment, was without consideration was a jury question on the facts proven, and not for the trial court or Court of Civil Appeals.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 110; Dec. Dig. ☞58(2).]

**16. RELEASE ☞13(1)—WANT OF CONSIDERATION—FAILURE OF PARTY.**

An injured railroad employé, who gave the road a release of liability in consideration "of an order on the treasurer of said company for the sum of one dollar," and failed to present such order for payment, could not attack the release for lack of consideration, since a party cannot base an action for breach of contract on his own fault or neglect.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21, 22, 27; Dec. Dig. ☞13(1).]

**17. RELEASE ☞58(2)—INJURIES TO SERVANT—QUESTION FOR JURY.**

In an action for injuries by a railroad's employé, whether plaintiff worked at least one day after he signed a release of all liabilities, in consideration of the road's promise to employ him further for that period, *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 110; Dec. Dig. ☞58(2).]

**18. RELEASE ☞13(6)—EXECUTION.**

Where an injured employé executed a release of all liabilities to the railroad company in consideration of its promise to employ him further for one day and an order on the treasurer of the company for $1, the release was executed, though such employé did not work for the day or receive his dollar, since by executing the release he did what he was obligated to do, leaving only an outstanding liability on the side of the company.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 29; Dec. Dig. ☞13(6).]

Appeal from District Court, Potter County; W. E. Gee, Special Judge.

Action by C. I. Fitts against the Panhandle & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant. J. Marvin Jones, L. C. Barrett, E. T. Miller, and Jas. N. Browning, all of Amarillo, for appellee.

HUFF, C. J. The appellee, Fitts, in this action sued appellant, Panhandle & Santa Fé Railway Company, for damages occasioned by the loss of an eye. It is alleged that appellant is a railroad corporation, and that appellee was employed as a truckman, and in the course of his employment he assisted in putting an auto into a box car, and while one of the appellant's employés was nailing a triangular block against one of the rear wheels of the auto, appellee was directed by his foreman to wrap some burlap or similar material on the other side of the wheel, to protect it from injury, and while so employed, some chip or piece of iron or other material flew off the hammer or nail, which such servant was using in spiking down the block, and entered the left eye of appellee, penetrating the lens and burying itself in the ball of the eye, which, it is alleged, was still located therein, and as a result thereof the sight of the left eye was entirely destroyed. The negligence alleged is that: Appellant (a) was using old blocks and old nails that had been repulled and used several times in the blocks, and in pulling the same the heads had become loosened, battered, and broken and the nails bent. The hammer was an old one, and such defects made it dangerous to use when other servants were around. (b) Appellant was negligent in furnishing and using such nails, blocks, and hammer while other employés were around, and in furnishing such instrumentalities and using the same while appellee was at work at the other side of the wheel. (c) That such instrumentalities rendered the place an unsafe place to work, and appellant was negligent in failing to furnish a safe place to work. (d) That appellee was inexperienced in that character of work, and had never assisted in blocking an auto before, and did not know the defects and appreciate the danger from the defects, and that appellant failed to warn him thereof. That each of the acts mentioned constituted separately and collectively negligence on the part of appellant, its agents and servants, and were the proximate cause of the injury. The petition describes particularly his injury, causing the loss of the left eye and impairment of the right, suffering, pain and impairment of ability to follow his regular business, which was firing a locomotive engine; that the work at which he was engaged at the time of his injury was only temporary employment. The appellant answered by general and special exceptions, denial of the several grounds of negligence, contributory negligence, assumed risk and that appellee had, for valuable consideration, released the appellant from damages, by written contract. It also answered that it was engaged in interstate commerce; that the auto being loaded into the car was a shipment from Amarillo, Tex., to Enid, Okl., a point in one state to a point in another. The appellee replied by supplemental petition, which it will not be necessary to set out. A verdict and judgment was rendered for appellee for $3,000.

The first assignment is based on the action of the trial court in refusing to instruct a verdict for appellant. The propositions presented under this assignment are: (1) The evidence fails to present actionable negligence upon the part of appellant; (2) negligence was not shown in furnishing secondhand nails, or that they were being used at the exact time of the accident; (3) that the

accident was not shown to have been, or that it could have been, in contemplation of the appellant; (4) that the appellee, as a matter of law, assumed the risk incident to his employment. We believe the evidence sufficient to authorize a finding by the jury that the nails used were as alleged, and that a particle therefrom entered the eye of appellee at the time as alleged, and that the appellant, its officers or agents, were negligent in the particulars alleged, and that such negligence is the proximate cause of appellee's injury.

[1-5] It is admitted by both parties that this case falls under the federal Employers' Liability Act. Under the first section of that act an interstate carrier is liable for injuries to its employés while so engaged—
"resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier."

Under this act the rule of fellow servant does not preclude a recovery. Thornton's Federal Employers' Liability Act, § 67, p. 111; Watson v. Railway Co. (C. C.) 169 Fed. 942; Railway Company v. Horton, 233 U. S. 492, 34 Sup. Ct. 639, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. Under this act, also, negligence on the part of the carrier, its officers or agents, must be shown.
"The extent of its duty to its employés is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen." The Horton Case, supra.

This case does not rest on the duty of inspection. The grounds of negligence alleged are not that appellant failed to inspect. The appellant is doubtless correct in its proposition that a simple tool like a hammer or nails does not impose upon the master the duty of inspection. The cases of Railway Co. v. Larkin, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944, and Railway Co. v. McCrummen, 133 S. W. 899, so hold. The question here is, Did the appellant, its officers or agents, use ordinary care to furnish safe appliances under the circumstances of this case, for the work to be done? It is held in this state, as well as by the Supreme Court of the United States, to be a duty upon the master to use ordinary care to furnish safe tools and instrumentalities with which to do the work. Drake v. Railway Co., 99 Tex. 240, 89 S. W. 407; Railway Co. v. Schuler, 46 Tex. Civ. App. 356, 102 S. W. 783; Buchanan v. Blanchard, 127 S. W. 1153. The question whether there was negligence on the part of appellant, its officers or agents, is one of fact, which must be determined from the facts found by the jury, and we believe the facts in this record will support a finding of negligence by the jury. Railway Co. v. Harvey, 228 U. S. 319, 33 Sup. Ct. 518, 57 L. Ed. 852; Railway Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521, and the authorities above cited.

[6, 7] It will be noted by the fourth proposition appellant contends that as a matter of law appellee "assumed the risk and danger incident to his employment." Under the employers' liability statute (section 4), in cases of this kind, assumed risk is held to apply and have the same effect as at the common law. Under this act, as at common law, the employé does not assume the negligence of the master unless he knew of such negligence, or must necessarily have so known. The Horton Case, supra. The proposition is not here asserted that appellee knew, or should have known, of the negligence charged, but only that he assumed the danger incident to the work. If, therefore, there was negligence shown and the jury so found, the proposition presented no error in the finding, to the effect that the appellee assumed the risk of such negligence, knowing thereof, or was charged with knowledge. If, however, there had been such proposition, the court would not, in our judgment, have been warranted in instructing a verdict on that ground.
"An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages so far as these are not attributable to the employer's negligence; but the employé has the right to assume that his employer has exercised proper care with respect to providing a safe place of work and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear, not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it."

Again, it is said in that case, the language of which is applicable to the facts of this case:
"There was no direct evidence that he knew of the defect, and it does not appear to have been part of his duties to inspect the machine or the wheel, or to look after their condition. He had been employed for only three or four days in work that required him to ride upon the car, and at the utmost it was a question for the jury whether the defective condition of the wheel was so patent that he should be presumed to have known of it; and then the question whether the defect was such as to render the use of the car dangerous was in dispute at the trial; hence it could not be properly held that the risk was undisputably obvious, even to one who knew of the defect." Railway Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Railway Co. v. Harvey, 228 U. S. 319, 33 Sup. Ct. 518, 57 L. Ed. 852; Railway Co. v. Scott, 160 S. W. 432, and authorities cited.

Before an employé will be held to have assumed the risk arising out of the negligent conduct of his fellow, it must be shown that such negligent conduct was known to the employé or so customary that he should be charged therewith, and that he appreciated, or was bound to appreciate, the danger. Railway Co. v. Schaffer, 220 Fed. 809, 136

C. C. A. 413. The evidence is sufficient to show, also, that appellee was under the supervision and direction of his foreman, who directed the parties to do the work in the manner in which it was done, which it was appellee's duty to obey, and he had the right to assume that the instrumentalities furnished were safe and proper in the absence of knowledge to the contrary. Schuler Case, supra. The first assignment is overruled.

The second and third assignments are overruled for the reasons given in considering assignment No. 1.

The fourth assignment is overruled. We do not think the sixth paragraph subject to the criticism urged; if, however, there was any doubt upon this question, which we do not have, the seventh and eighth specially requested charges, given at the request of appellant, fully presented its theory.

The fifth assignment will be overruled. We think the charge of which complaint is made is substantially correct, and, when taken as a whole, could not have misled the jury.

[8] The sixth assignment is also overruled. The charge of the court substantially covered the issue sought to be presented by the one requested, in so far as it was the law. We doubt in some respects the correctness of the proposition presented by the appellant. The authorities quoted from heretofore we believe sustain the court's charge as given.

The seventh assignment of error is overruled.· There was no error in refusing the fourth specially requested charge.

The eighth assignment is overruled. The charge here requested was and is substantially covered by requested charges 8 and 13, given at the request of appellant, and covered the issue sought to be presented by specially requested charge No. 14, for the refusal of which complaint is here made.

[9, 10] The ninth assignment urges that the court was in error in excluding a certain release of damages signed by the appellee, on the 9th day of October, 1914. The injury complained of is alleged to have been received October 4, 1914. The facts show it was two or three days after the injury before appellee realized that there was any serious injury to his eye. Thereupon he notified his foreman, who sent him, with a proper order, to the physician of the railroad, and who, upon examination, told the appellee there was nothing in his eye, and to go back to work. After first receiving the injury, appellee did not return to work for two or three days. Upon return, however, his foreman told him he would have to sign, as appellee says, "something," and he did sign the release offered in evidence. He appears to have worked two or three days after signing the release and after his visit to the doctor. Afterwards, he went to the hospital at Topeka, Kan. It appears after his visit to the railway physician the steel or iron was located in his eye, from which he lost his sight. The iron was not removed by any of the physicians. He had a specialist to examine it. The $1 consideration recited as paid in the contract was not in fact paid, or offered to be paid, until at the trial, which the trial court rejected as a tender. The release recites appellee's employment, and that while so employed he received injuries; that the company would not retain in its employment any one who had an unjust claim against it for damages, and would not promise work to or consider an application of any one who had an unjust claim against it. For the purposes of fully ending and determining any claim for damages, and for and in consideration of $1, "and in consideration of the promise of said company to employ me for one day as trucker, at the usual rate of pay, the execution thereof being conclusive evidence that said company has made me such promise and for such further time and in such capacity as may be satisfactory to said company, and not longer, or otherwise," he released or discharged the company for any and all manner of suits, for money claims and demands which he ever had or then had, by reason of any matter, cause, or thing whatever, including personal injuries of whatsoever nature, including any that may thereafter develop, as well as such as were then apparent, "it being expressly agreed and understood that said company is not bound or obligated by these presents, or otherwise (except as to said one day) to retain me in any particular kind of employment, nor for any definite time." The appellee objected to the introduction of this contract in evidence, because there was no consideration shown for it and it is shown to be without consideration. This objection was sustained by the trial court.

This contract appears to be an exact copy, except as to the subject-matter, of the contract in the case of Quebe v. Railway, 77 S. W. 442; same case by the Supreme Court, 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545. The Court of Civil Appeals expressly held that the contract showed a consideration. The Supreme Court affirmed the judgment of the trial court and the Court of Civil Appeals in that case. The Supreme Court evidently concluded this contract did not fall under the rules of construction as to consideration applied in the case of Railway Company v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644. The opinions in both cases were written by Judge Williams of the Supreme Court; one case was handed down May 26, and the other May 30, 1904. It, therefore, is unnecessary for us to discuss this contract further than to say if the agreement to furnish one day's work rested at the option of the appellee, he accepted the proposition and did the work so furnished, and therefore rendered the contract one executed. The other cases cited by appellant appear to be in point: Railway Co. v. Scott, 72 Tex. 70,

10 S. W. 99, 13 Am. St. Rep. 758; Railway Co. v. Shirley, 61 S. W. 524; Railway Co. v. Sullivan, 20 Tex. Civ. App. 50, 48 S. W. 598. The action of the court in excluding the contract upon the objections made, under the decisions of this state, must necessarily reverse the case.

The fifth section of the federal Employers' Liability Act will not apply in this case. That section renders any contract void the purpose or intent of which is to "exempt" the carrier from liability created by the act. While the section mentioned is general in its terms, it evidently was the purpose of Congress to prohibit the carrier from entering into contracts with employés, previous to the injury, providing for its exemption from the consequences of its negligence. This seems to be the ruling in the cases of Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Railway Co. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911; Taylor v. Wells Fargo & Co., 220 Fed. 796, 136 C. C. A. 402. It cannot be contended successfully, we believe, that Congress intended to take away the right of the carrier to settle by contract for damages occasioned and sustained by its negligence, or which may be asserted unjustly by its employés.

[11] Judge Williams, in the Quebe Case, supra, suggests the distinction between the construction of contracts and where they are attacked for mistake or fraud.

"The two questions are not always kept distinct in the discussion of such cases, as they must be kept here."

The contract in this case was excluded by the court because it did not show a consideration.

It is contended by appellee the jury found negligence, and that the damages sustained was $3,000. The consideration may be inadequate; one day at 17½ cents per hour would certainly appear so, in the light of the verdict, but this did not render the contract at that time a nudum pactum. If the appellee signed the contract without being induced thereto by mistake or fraud, he would be bound by it. He will be presumed to have taken the risk of the injury to his eye being permanent or serious. His opportunities were equal to the appellant's in that respect. It will therefore devolve upon the appellee, in order to avoid the contract of release, to allege and prove that it was obtained or executed through fraud or mistake.

The tenth assignment will be overruled, for the reasons given in overruling the first assignment.

Reversed and remanded.

### On Motion for Rehearing.

If this case is stripped of the facts bearing upon fraud, mistake, overreaching, or whether there was only an agreement to give only one day's work, to which appellee is already entitled under a contract of employment, and the like—all of which were jury questions under the evidence, and not for the trial court or this court—the question becomes simple.

[12-15] In the first place, a written contract imports a consideration. Our statute provides:

"Every contract in writing hereafter made, shall be held to import a consideration in the same manner and as fully as sealed instruments have heretofore done." Article 7093, R. C. S.; Warren v. Gentry, 21 Tex. Civ. App. 151, 50 S. W. 1025; Railway Co. v. Shirley, 62 Tex. Civ. App. 158, 130 S. W. 687; Harris v. Cato, 26 Tex. 338.

Where the writing does not show upon its face a want of consideration, it is admissible in evidence, without proof aliunde of a consideration. The duty, therefore, was on appellee, who asserted it was without consideration to prove that assertion. This was a jury question upon the facts proven, and not for the trial judge or this court. In the Quebe Case, 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545, the court passed on a contract of which this is a literal copy, with the exception of the parties, injury named, date, and the like. The appellant railway had evidently used the contract in that case to model the one here set up. The Supreme Court, in speaking of that contract, said:

"The consideration was a valuable and legal one, though small. Considering the fact that the matter settled was regarded by both parties as involving no large amount, it cannot be said that the smallness of the consideration, by itself, furnishes ground for disregarding the release."

It would be absurd to say the Supreme Court held in that case the contract was void because on its face it showed no consideration, and that it was rendered valid by proving $1 paid, and one day's work. The contract was definite as to its terms, and evidences mutuality. It was not indefinite or unilateral as is the contract in the Smith Case, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644, so much relied upon by appellee. In that case the following is the provision of the company's promise:

"Now, therefore, in consideration of re-employment by said company for such time only as may be satisfactory to said company."

This contract was clearly indefinite as to time and was unilateral. There was no promise on the part of the company to employ for any time. Employment rested alone upon the will or wish of the company; hence there was no contract binding upon either party, no meeting of minds; and such is the nature of the contract in the case of Railway Company v. Winton, 7 Tex. Civ. App. 57, 26 S. W. 770. In the Smith Case the time of employment was so indefinite by the terms of the contract that employment thereafter would not relate back to the original promise and thereby make a valid contract. The time of employment is required to be suffi-

ciently definite in the contract to enable the court to ascertain it. In other words, the consideration is to be tested by the agreement and not what was done under it. In the contract in question the amount paid and the time of employment promised was definite by the agreement, and hence the court could not, as a matter of law, exclude the contract from the jury.

[16-18] It is contended by appellee that he was never paid the dollar. The terms of the contract are:

"For and in consideration of an order on the treasurer of said company, for the sum or one dollar, the receipt whereof is hereby acknowledged."

Did appellee get the order "on the treasurer"? He does not testify whether he did or not in his evidence. If he got the order the company did not breach its contract; if he did not, whose fault was it that he did not? The evidence does not show that the company failed or refused to give the order, or that its treasurer refused to pay it. A party cannot base an action for breach of contract on his own fault or neglect. It is insisted that after executing the contract appellee did not work for appellant, as found by us in the original opinion. He testified:

That on the 4th day of October, 1914, about 11:30 in the morning, Sunday, he received the injury. From that time until Thursday thereafter he did not work. "On Thursday I went back to work. The same character of work that I was doing when I left. I think the last day I worked was on the 13th of October."

The contract offered in evidence is dated October 9, 1914, and appellee testified the release was signed by him on that day. After the injury on the 4th he testifies he went back to work on the 8th. He got an order on that day from his foreman, directed to the company's doctor, and went to see the doctor the next morning. After going to see the doctor, and after he returned, he was required to sign the paper. The doctor, on that visit, found nothing in his eye. Appellee then says after he went back to work his eye continued to trouble him, and later he went to Topeka. Broadus, a witness, testified after the time of the alleged injury:

"The plaintiff came back in two or three days and worked two or three days before he went to the 'hospital' "

—which is shown to be in Topeka. This testimony clearly raises the issue that he worked at least one day after he signed the release. It was certainly an issue for the jury to determine, and not for the court. In our judgment, on the question of admitting the contract in evidence, it makes no difference whether appellant proved he worked or was given the order. That matter was for the appellee in any event. We do not understand the mere fact that appellee did not work or receive his dollar would defeat the contract. He has a valid promise therefor. He, having accepted the terms of the contract, by executing the release did what he was obligated to do, leaving an outstanding liability only on the side of the railway company. Heisch v. Adams, 81 Tex. 94, 16 S. W. 790; Rose v. Railway Co., 31 Tex. 60.

If the railway company refused to pay or furnish the work promised, a different question may be presented. There is nothing in this record to show refusal on its part.

The appellee cites Freeman v. Morrow, 156 S. W. 284, as holding contrary to the Supreme Court on this contract. That case was tried before the court without a jury, who filed his findings of fact. The question was one of fact, whether there was a consideration for the release. The trial court found there was none. The question was not whether the agreement to employ for one day at the usual rate of pay was a valuable consideration, but appellant was already legally bound to employ for that same day. The trial court found there was a contract between the employé and the company in writing for a definite time, which had not expired when the release was given, and would not expire until after the one day mentioned in the release. The trial court, whose province it was in that case to pass on the facts, so found; the appellate court held, under such circumstances, there was no consideration for the release. It is useless to repeat the facts were for the jury and not for the trial court, or this court. When the release was offered in evidence, it should have been admitted to be considered by the jury with the other facts as to whether there was a consideration therefor. The trial court or this court have not the power to determine the facts in this case. It was for the jury.

Motion overruled.